UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRISON LEGAL NEWS, a Project of
the Human Rights Defense Center,

        Plaintiff,

v.                                                        Case No. 11-CV-13460
                                                        Honorable Denise Page Hood

LIVINGSTON COUNTY SHERIFF BOB
BEZOTTE, individually and officially,
and LIVINGSTON COUNTY,

        Defendants.

                                                     /

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

        This matter involves a constitutional challenge to Defendants' inmate incoming mail policy. This matter is before the Court on Prison Legal News' Motion for Preliminary Injunction [Docket No. 25, filed January 12, 2012]. This matter has been fully briefed and is now appropriate for disposition. For the reasons stated below, Prison Legal News' Motion for Preliminary Injunction is DENIED.

**II.    ANALYSIS**

        Defendants argue that PLN does not have standing to assert its First and Fourteenth Amendment claims because it cannot establish an injury-in-fact. Standing is a threshold issue that must be determined before the Court may consider any substantive issues. *Planned Parenthood Assoc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). Article III standing requires that (1) plaintiff suffered an "injury in fact, which is both concrete and particularized, and actual or imminent;" (2) there is a causal connection between the injury and complained of activity such that

it is fairly traceable to the defendant's actions; and (3) it is likely, not speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The party seeking to be heard in federal court must prove each element of standing with specificity. *Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999).

Contrary to Defendants' assertions, PLN and inmates have a First Amendment interest in communicating with one another subject to regulation that furthers legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1987). PLN alleges, as a publisher, that Defendants censored PLN's attempted communications with the inmates in Livingston County Jail in violation of PLN's freedom of expression and press and right to due process. *See Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988)*; Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 64 n.6 (1963). Defendants concede that they rejected PLN's books, brochures, and postcards. These alleged harms are neither vague nor abstract. PLN has standing to assert its First and Fourteenth Amendment claims. *See Prison Legal News v. Livingston*, 683 F.3d 201, 212–13 (finding that "PLN suffered an injury—denial of the opportunity to communicate with certain inmates" was sufficient to support standing on its First Amendment claims).

Having found that PLN has standing, the Court will now consider PLN's request for injunctive relief. Whether a preliminary injunction is appropriate is within the district court's discretion. *Golden v. Kelsey-Hayes,* 73 F.3d 648, 653 (6th Cir. 1996). The purpose of a preliminary injunction is to maintain the relative positions of the parties pending a resolution on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an extraordinary remedy that the Court will not grant absent a clear showing by the movant that the case demands such relief. *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

The district court must consider four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant would suffer irreparable harm absent a preliminary injunction; (3) whether granting the preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public's best interest. *Overstreet*, 305 F.3d at 573. The Court must make specific findings on each factor unless fewer factors would be dispositive. *Performance Unlimited v. Questar Publishers, Inc.* 52 F.3d 1373, 1381 (6th Cir. 1995). These factors are not prerequisites of relief, but must be balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). However, "because the questions of harm to the parties and the public interest generally cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation, the crucial inquiry often is" whether there is a constitutional violation. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

### A. Likelihood of Success on the Merits

The Court must engage in the two-step analysis applied in *Thornburgh* to determine whether the challenged regulation is reasonably related to a legitimate penological interest. *Hrdlicka v. Reniff*, 631 F.3d 1044, 1048 (9th Cir. 2011); *Thornburgh*, 490 U.S. at 408. The Court must first determine whether PLN has asserted a protected constitutional interest before analyzing whether Defendants' regulation is related to a legitimate penological interest. *Hrdlicka*, 631 F.3d at 1048 ("we first determine whether any First Amendment interest is implicated" before "apply[ing] the four-factor *Turner* test"). The Court has already found that PLN's claims rest on a constitutionally protected interest. The Court will proceed to the second step in the *Turner* analysis.

The Supreme Court has identified four factors to consider when determining whether "a prison regulation impinges on inmates' constitutional rights." *Turner v. Safley,* 482 U.S. 78, 89–91

(1987). The *Turner* test requires that:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. there must be alternative means of exercising the right that remain open to prison inmates;
>
> 3. we must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and
>
> 4. there must not be alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Turner,* 482 U.S. at 89–91). Failure to satisfy the first factor is dispositive. *Turner*, 482 U.S. at 89–90. The remaining factors must be balanced together in order to evaluate the reasonableness of the challenged regulation. *Jones*, 569 F.3d at 267. The Court will review the challenged regulation with deference to "the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh*, 490 U.S. at 408.

### 1. Rational Connection to Legitimate Penological Interest

As to the first factor, the court must consider "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Thornburgh*, 490 U.S. at 414. A regulation will not be upheld if "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary and irrational." *Turner*, 482 U.S. at 89–90.

Defendants contend in their response that the postcard-only policy posted on the website is

not their only mail policy.[1] The formal mail policy ("book policy) for delivery of books, magazines and other materials is as follows:

> Inmates will be allowed to receive newspapers, magazines, and other types of publications, which are legally available to the public as long as they are mailed directly from the publisher and approved by Inmate Services.
> a) All Cost of subscription is the inmate's responsibility.
> b) Materials will be delivered to the inmate as long as he/she is incarcerated.
>
> c) Upon release, the inmate is responsible for changing the address . . . .
>
> d) Exceptions:
>    i) Specific information regarding weapons, explosives, incendiary devices, poisons or dangerous drugs.
>    ii) Inflammatory writings advocating disorder, violence or insurrection against correctional personnel or facilities.
>    iii) Pornographic materials.
>    iv) Any instructional material in the martial arts.
>    v) Any other material that pose a safety or security risk, or interferes with the orderly operation of the jail.

[Docket No. 32, Pg ID 1291]. Defendants argue that its postcard-only and book policies are content neutral and reasonably related to the penological interests of conserving jail resources and maintaining security and safety for inmates and jail personnel. Defendants note that the time to process mail decreased from eight hours to four hours since the postcard-only policy was implemented. According to Defendants, the decrease in time spent processing mail reduces the likelihood for errors in processing and, therefore, increases jail security. Personnel are now free to engage in other security-related functions. It goes without question that ensuring that mail does not contain contraband is a legitimate government interest. *See Kalasho v. Kapture*, 868 F. Supp. 882, 887 (E.D. Mich. 1994) ("Protecting prison security is a purpose central to all other correction goals.

---

[1] The Court is curious as to why Defendants failed to provide this information in their Answer or Motion for Judgment on the Pleadings, but will nonetheless proceed in the absence of objection from PLN.

As a consequence, the regulation's goal is legitimate, as it relates to legitimate security concerns.") (internal citations omitted).

The relevant question becomes whether Defendants' postcard-only policy is neutral. It is important for the court to consider whether the challenged regulation operates in a neutral fashion, "without regard to the content of the expression." *Turner*, 482 U.S. at 90. Although the mail policy is facially neutral, Defendants' inconsistent statements cut against a finding of neutrality. Defendants assert that their postcard policy "applies equally to *all* correspondence except bona-fide legal mail." [Docket No. 32, Pg ID 1127] (emphasis added). Defendants admonish PLN for "fail[ing] to appreciate that a separate policy pertains to books, magazines, and other reading materials." [Docket No. 32, Pg ID 1123]. However, the postcard-only policy published on Defendants' website does not identify an exception for "books, magazines, and other reading materials." In fact, the affidavit of Lt. Tom Cremonte attached to Defendants' Response further confirms that Livingston County Jail's mail policy "requir[es] *all* incoming and outgoing correspondence to be in the form of a standard 4" x 6" postcard" with the exception of bona-fide legal mail. [Docket No. 32, Pg ID 1299] (emphasis added). The use of the word "all" would necessarily imply that *all* mail (except bona-fide legal mail) must be on a 4" x 6" postcard.

Without deciding what policy is actually in effect at Livingston County Jail, there is a question of fact as to Defendants application of its policies to PLN. Defendants provide no explanation as to why PLN's books and other materials were rejected. PLN's books were addressed to specific inmates, which is tantamount to a subscription, the cost of which was born by the inmate. Defendants do not argue or provide any evidence showing that each piece of mail is checked to ensure that it follows a subscription or that inmates are required to follow a specific procedure in

order to subscribe to a publication. Also absent from Defendants' response is an explanation of why the postcards PLN subsequently mailed that conformed to Defendants' posted policy were not delivered to inmates. Defendants assert that their policy is content-neutral but appear to have applied their policy in such a way that is discriminatory towards PLN.

### 2. Alternative Means of Exercising the Right

The second *Turner* factor requires the Court to consider alternative methods of expression left open for inmates. "[C]ourts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Turner*, 482 U.S. at 90 (quoting *Pell v. Procunier*, 417 U.S. 817, 829 (1974)). This factor is satisfied if the regulation allows the inmate to receive and read a broad range of publications. *Thornburgh*, 490 U.S. at 418. Defendants argue that there are several alternative means of expression open to PLN. Inmates may receive publications through subscription or PLN may donate its materials to the jail library.

Inmates and those on the outside are afforded the protection of the Constitution subject to reasonable restrictions tailored to further a legitimate penological interest. Although the very nature of the inmate status requires less privacy, this does not necessarily dictate that inmates and those sending correspondence forfeit privacy as to the entire world. Those who send letters communicating personal information to an inmate expect that trained prison or jail staff will inspect the letter for contraband. *See* Docket No. 32, Pg ID 1288 ("Incoming mail shall be inspected for contraband and shall not be read unless there is a valid reason to suspect a security violation."). However, there is no expectation that personal information in the correspondence will be displayed for anyone that happens to be in reading distance of the postcard. Requiring inmates and those on

the outside to fit everything into a postcard—broadcasting all information contained on it to the world—robs the inmates and non-inmates of the meaningful expression that the Constitution protects.

A jail by nature is to serve as a temporary housing facility, but some pretrial detainees may find themselves in Livingston County Jail for several months. The Court is mindful that the penal system is purposed for retribution *and* rehabilitation. The rehabilitation of inmates is as dependent on valuable contact with those on the outside as it is on the general penal experience on the inside. *See Procunier v. Martinez,* 416 U.S. 396, 412 (1974) ("the weight of professional opinion seems to be that inmate freedom to correspond with outsiders advances rather than retards the goal of rehabilitation"). Families are no longer able to send pictures of loved ones and clergy and other community leaders are foreclosed from sending spiritual tracts and other correspondence. Although the Court cannot completely appreciate the day-to-day hardships of maintaining a safe and secure facility on dwindling resources, the protections of the Constitution should not submit to the need for efficiency.

Although Defendants' postcard-only policy forecloses alternative means of expression for inmates, the relevant question is whether there are alternative means of expression left open for PLN. For the purpose of this motion, the Court regrettably must answer this question in the affirmative and PLN has not shown otherwise. Inmates at Livingston County Jail may subscribe to PLN's publications. PLN may also donate its materials to the jail library, which would alleviate any concerns that PLN would not be able to inform inmates of its existence. Inmates may then subscribe to receive PLN's reading materials.

    **3.**     **Impact of Accommodation on Others**

The Court will next consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. The Supreme Court has cautioned courts to give due consideration to the discretion of jail officials "[w]hen the accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff." *Id.* Defendants argue that requiring them to allow non-postcard correspondence or accept unsolicited mail would cause a "ripple effect" that would significantly expand the resources and time in processing inmate mail. As a result, jail personnel would be directed away from security maintenance.

The postcard-only policy has decreased the time spent on mail by half. An extra four hours of manpower to sort through mail could cause a ripple effect on a jail that already has limited resources. PLN argues that the Michigan Department of Corrections (MDOC) and the Bureau of Prisons (BOP) allow inmates to receive letter correspondence. However, PLN has provided no evidence that MDOC or BOP are facing the same budgetary and staffing concerns that Defendants indicates they have. Four extra hours of manpower to sort mail is not minimal. The Court cannot say with any confidence that this extra time would not have a significant effect on security at Livingston County Jail.

### 4.     Availability of Fully Accommodating Alternatives

The final factor "is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner,* 482 U.S. at 90–91. If the "claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests," the Court may consider this as evidence that the jail's response was exaggerated. *Id.* at 91. PLN argues

9

that the obvious alternative "is to inspect the contents of the envelopes in the same way the mail was inspected prior to Defendants' adoption of a 'postcard only' policy." Again, Defendants note that staff at the jail was reduced and the postcard-only policy has cut mail processing by half. PLN fails to provide any evidence that going back to the old policy would be a *de minimis* cost to Defendants. This factor does not weigh in PLN's favor.

The majority of the *Turner* factors weigh in favor of Defendants. At this stage, it does not appear likely that PLN would be successful on the merits.

### B.     Irreparable Injury

PLN asserts that it suffers irreparable injury because it is unable to communicate with inmates at Livingston County Jail or resolve the censorship of its speech through a notice and appeal process. The Supreme Court has stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). However, PLN has not shown that it is likely to be successful on the merits and necessarily cannot show that it would be harmed irreparably absent injunctive relief. *See Connection Distrib. Co. v .Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("[T]o the extent [plaintiff] can establish a likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights.").

### C.     Harm to Others & Public Interest

Although the Court sympathizes with the position of the inmates in the Livingston County Jail who are forced to maintain connections with those on the outside through a 4" x 6" postcard,

10

the Court must, at this time, defer to jail officials in the absence of a showing that PLN will likely be successful on the merits. The issuance of injunctive relief could have a significant effect on the safety of both inmates and jail personnel alike. It is in the public interest to maintain jail stability and security. The Court should be slow to dismantle prison regulations absent a showing that it is absolutely necessary. These factors warrant against issuing injunctive relief.

### III.  CONCLUSION

Accordingly,

IT IS ORDERED that PLN's Motion for Preliminary Injunction [Docket No. 25, filed January 12, 2012] is **DENIED**.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 29, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager