**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PRISON LEGAL NEWS, a Project of
the Human Rights Defense Center,

        Plaintiff,

v.                                            Case No. 11-CV-13460
                                                Honorable Denise Page Hood

LIVINGSTON COUNTY SHERRIFF BOB
BEZOTT, individually and officially,
and LIVINGSTON COUNTY,

        Defendants.
_____/

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS**

**I.  INTRODUCTION**

        This matter involves a constitutional challenge to Defendants' mail policy as to prisoners. This matter is before the Court on Defendants' Motion for Partial Judgment on the Pleadings. For the reasons stated below, Defendants' Motion for Partial Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.[1]

**II.  BACKGROUND**

        Plaintiff, Prison Legal News ("PLN") initiated this action on August 9, 2011.

---

[1] The Court notes that this Order remains the same as this Court's March 29, 2013, Order, except for the "It is Ordered" portion, which had been amended.

PLN alleges that Livingston County and Livingston County Sheriff Bob Bezotte's policy limiting inmate mail to postcards violates the first amendment freedom of speech, press, and association, and the fourteenth amendment right to due process.

PLN is a project of the Human Rights Defense Center in Washington, DC. PLN distributes a monthly newsletter to inmates, attorneys, courts, libraries, and the general public on prisoner related news and legal issues. The Livingston County Jail enforces the following mail policy:

> MAIL – Inmates are permitted to write to any person outside of our Jail facility. Incoming Inmate correspondence must be addressed as follows:
>
> Inmate Name, Resident
> Livingston County Jail
> . . .
>
> - Incoming mail must reflect sender's name and address.
> - Correspondence from attorneys, as well as court and public officials may be opened in the presence of an inmate.
> - Mail must be sent via US Postal Service.
> - Items NOT allowed: postage stamps, envelopes, blank stationary, jewelry, food, books, magazines, sexually explicit pictures, cash, personal or company check.
> - All mail, except bona-fide legal mail, will be by standard post cards. This is both incoming and outgoing mail.
> - Incoming mail deemed inappropriate may be placed in the inmate's property locker.

In January, April, and June 2011, PLN individually addressed and mailed a sample copy of the *Prison Legal News* in a manila envelope via First Class Mail, a

copy of a soft back book entitled *Protecting Your Health & Safety* via Media Mail, and three (3) single-page, double-sided informational brochures in a standard #10 sized envelope via First Class Mail to over 50 prisoners in the Livingston County Jail. Each item bore a return address to PLN's PO Box in Vermont. In February 2011 and each month thereafter, PLN sent a current issue of its publication to select individually addressed inmates. No responses were received from the inmates nor did PLN receive notice that the mail was not delivered. In September 2011, Defendants refused to deliver postcards to specific inmates. PLN alleges that the inmates did not receive any correspondence from PLN because Defendants censored it.

Human Rights and Defender Center attorneys sent correspondence on PLN's behalf marked as "Legal Mail" to select inmates. No responses were received. PLN outside counsel then attempted to visit select inmates during business hours at the Livingston County Jail and was refused visitation by jail personnel.

### III. ANALYSIS

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. The manner of review under Rule 12(c) is the same as review of a motion to dismiss pursuant to Rule 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Rule 12(c) requires the Court to "construe the complaint in the light most favorable to the nonmoving party, accept the

well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 337 (6th Cir. 2007). However, the Court will not accept as true the plaintiff's legal conclusions or unwarranted factual inferences. *Id.*

### A. First Amendment

Defendants argue that PLN does not have a first amendment right to distribute unsolicited sample copies of *Prison Legal News* to inmates. They contend that PLN, as a publisher, cannot access inmates when inmates, "through subscription, [have not] willingly [sought PLN's] point of view . . . ." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1987). The Court, however, disagrees.

It is well settled that an inmate does not lose his First Amendment right to receive mail by virtue of his incarceration. *Thornburgh*, 490 U.S. at 408; *Procunier v. Martinez*, 416 U.S. 396, 408–10 (1974). The Supreme Court has recognized that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,' nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Thornburgh*, 490 U.S. at 407 (quoting *Turner v. Safley,* 482 U.S. 78, 84, 94–99 (1987)) (internal citations omitted). Rather, "a prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives

4

of the corrections system.'" *Turner*, 482 U.S. at 95 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

The Court must afford considerable deference to "the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh*, 490 U.S. at 408. A prison regulation will be upheld if it is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. However, before the Court may engage in an analysis of whether the challenged regulation is reasonably related to a legitimate penological interest, the Court must first decide if a protected interest is at stake. *See Hrdlicka v. Reniff*, 631 F.3d 1044, 1048 (9th Cir. 2011) ("In examining regulations that restrict communications with inmates, we first determine whether any First Amendment interest is implicated."); *Thornburgh*, 490 U.S. at 408 ("there is no question that publishers who wish to communicate with those who, through subscription, willing seek their point of view have a legitimate First Amendment interest in access to prisoners").

Defendants assert that the Supreme Court in *Thornburgh* recognized that inmates have a First Amendment right to receive mail only when they have willingly sought the point of view of the publisher through a subscription. 490 U.S. at 408. The Court will not so significantly limit *Thornburgh* as the Defendants urge. In

5

*Thornburgh*, the Supreme Court recognized the interest of non-inmates and inmates in communicating with one another. *Id.* (noting that access to inmates is essential to lawyers, journalists, and loved ones). The Supreme Court noted that in the context of those categories of individuals who may seek access to inmates, "there is no question that publishers who wish to communicate with those who, through subscription, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners." *Id.* The Supreme Court did not, as the Defendants assert, limit First Amendment protection to those whose communications were a result of volition on the part of the inmate.

Rather, *Thornburgh* stands for the proposition that "prisoners and those 'reaching out' to them enjoy generally-existing constitutional rights unless those rights interfere with the prison regulations reasonably related to legitimate penological interests." *Livingston*, 683 F.3d at 214; *Hrdlicka*, 631 F.3d at 1049–51 ("A First Amendment interest in distributing and receiving information does not depend on a recipient's prior request for that information."). Communication between inmates and non-inmates is protected regardless of who initiates the communication. The regulation at issue goes farther than simply limiting an inmate's expression to material that the inmate has voluntarily agreed to receive. Rather, Defendants' regulation forecloses all forms of expression that do not fit within the limited borders of a

6

postcard. To conclude otherwise would prevent inmates from receiving invaluable correspondence from loved ones, attorneys, and clergy who may not first receive the inmate's prior request.

Defendants note that this Court and the Sixth Circuit have upheld regulations banning bulk mail and free advertising. *See Sheets v. Moore*, 97 F.3d 164, 168–169 (6th Cir. 1996) (upholding ban on free ads, fliers and bulk mail); *Kalasho v. Kapturei*, 868 F. Supp. 882, 886–88 (E.D. Mich. 1994) (finding policy requiring that subscriptions are sent by first or second class mail constitutional); *Jones v. Campbell*, 23 Fed. Appx. 458 (6th Cir. 2001) (finding regulation that required inmates to prepay for first or second class postage for materials normally sent bulk mail constitutional); *Thompson v. Campbell,* No. 02-5588, 81 Fed. Appx. 563, 567–568 (6th Cir. Nov. 20, 2003) (unpublished) (upholding Tennessee ban on inmate receipt of mail that advocates anarchy or contains obscenity). However, the upholding of those regulations did not turn on whether the inmate had a First Amendment interest in receiving the information. The Sixth Circuit applied the *Turner* analysis and concluded that the challenged regulations were reasonably related to a legitimate government interest. Defendants would have the Court completely silence PLN without first determining whether Defendants' mail policy is reasonably related to a penological interest.

The Court must apply the four-factor standard provided in *Turner* when determining whether "a prison regulation impinges on inmates' constitutional rights." 482 U.S. at 89. First, the Court must determine whether the regulation is rationally related to a legitimate and neutral government interest. *Id.* The regulation must restrict the inmate's expression without regard to the expression's content. *Id.* at 90. Second, there must be alternative means of expression open to the inmate. *Id.* Third, the Court must consider the impact that the accommodation of the constitutional right will have on others in the prison. *Id.* Finally, the Court must consider the existence of obvious and easy alternatives as indicative of an exaggerated response by prison officials. *Id.* "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90–91.

Defendants argument hinges completely on the hope that the Court will find that PLN has not demonstrated a constitutional injury. Defendants do not provide any argument on whether the challenged mail policy would meet the requirements of *Turner*. Even if Defendants were to offer some legitimate penological interest, the Court would not be inclined to rely solely on the pleadings to make this determination. At this stage in litigation, PLN has provided sufficient allegations to demonstrate a First Amendment violation. Defendants' motion for judgment on the pleadings is

8

denied as to this point.

### B. Fourteenth Amendment

PLN claims that "Defendants provided PLN no notice of their intent to censor PLN's mail nor did Defendants provide to PLN an opportunity to appeal their censorship decision." [Docket No. 1, Pg ID 5]. Defendants argue that there is no due process violation because PLN does not have a constitutionally protected interest in distributing unsolicited sample publications. The Court recognizes that a claimant cannot assert a due process violation in the absence of a constitutionally recognized liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Given the Court's analysis above, Defendants' challenge to PLN's due process claim fails for the same reason. PLN has sufficiently stated a claim for a due process violation.

### C. Right to Litigate

Defendants argue that PLN has no right to access inmates or send legal mail to inmates when it does not represent any of the inmate recipients. PLN contends that its right to access derives from its right to litigate and not from its status as a member of the press. PLN cites a Supreme Court case and a case from the Eleventh Circuit to support its proposition that PLN has a First Amendment right to access inmates in order to assert its right to litigate PLN's constitutional grievances. *See NAACP v.*

*Button*, 371 U.S. 415 (1963); *Jean v. Nelson*, 711 F.2d 1455 (11th Cir. 1983). However, these cases do not support PLN's conclusion.

In *NAACP v. Button*, the Supreme Court held that a Virginia law which prohibited NAACP attorneys and supporters from encouraging members of the public to join litigation to desegregate schools was an unconstitutional infringement on the NAACP's First Amendment freedoms of expression and association. 371 U.S. 415, 429, 434 (1963). Upon invitation, NAACP attorneys would hold a meeting with parents and students to explain the necessary steps to desegregate schools. *Id.* at 421. There, potential litigants could express their interest in representation. *Id.* at 422. The NAACP attorneys would also distribute petitions and identify potential litigants amongst petitioners. *Id.* The Supreme Court found that the NAACP's solicitation of prospective litigants was a form of political expression and association and Virginia could not ban its efforts to encourage others to litigate. *Id.* at 429. It did not recognize a right to litigate, but explained that "the activities of the NAACP . . . are modes of expression and association protected by the First and Fourteenth Amendments which Virginia may not prohibit . . . as improper solicitation of legal business." *Id.*

The present case is distinguishable from *Button* in several important ways. First, the potential litigants in *Button* were members of the public that were not subject

to government detention. The standard to access an inmate is much higher than to access members of the general public. *See Thornburgh*, 490 U.S. at 408. Second, NAACP, unlike PLN, was informing individuals of their legal rights so those individuals could determine whether they wanted to pursue litigation. The NAACP attorneys sought to represent the individual. Here, PLN is a publication and not a legal aid organization. Although the distribution of its publication will ultimately inform inmates of their legal rights, PLN is sending *its attorneys* to talk to inmates in order to vindicate *PLN's* rights. PLN is not attempting to provide legal representation to the inmates. The purpose of the conversation is not to inform the inmate of an alleged legal wrong, but to gather more information on the alleged wrong committed against PLN. Finally, the NAACP did not impose an affirmative duty on the government. Its efforts to encourage individuals to pursue litigation were initiated and sustained by members of the NAACP.

PLN's reliance on *Jean v. Nelson* is also misplaced. In *Jean*, the government placed significant restrictions on attorney access to Haitian detainees; attorneys sought access to the detainees in order to inform them of their legal rights. The Eleventh Circuit noted "that regulation of aliens in detention is analogous to regulation in the prison context . . . [and] a determination of proper access regulations requires balancing the government's interest in detention and security against the plaintiffs'

11

first amendment rights." 711 F.2d 1455, 1508 (11th Cir. 1983). It went on to recognize plaintiffs' "purely legal claim of a right to solicit clients in detention. Although this solicitation may not permit individual face-to-face encounter, if *Button* and *Primus* mean anything they permit legal counsel to inform individuals of their legal rights when counsel does so as an exercise of political speech unaccompanied by expectation of remuneration." *Id.* at 1508–09. Again, PLN is a publication and not an organization seeking to offer legal services to inmates. Informing inmates of their legal rights is ancillary. The primary objective in talking to inmates is to allow PLN to better assert its own legal interests so that PLN will be able to distribute its publications. Here, PLN is not attempting to talk with inmates as an act of expression. Rather, PLN is talking to inmates is part of discovery.

PLN argues that it has a right to access inmates in order to vindicate its own constitutional grievances. PLN seems to be asking the Court to impose on the government an affirmative duty to assist PLN in the exercise of PLN's constitutional right to associate. No such affirmative duty on the government exists. *See Deshaney v. Winnebago*, 489 U.S. 189 (1989) ("the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). Such a requirement would impose a tremendous burden on prisons. *See*

*Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1513–14 (11th Cir. 1992) (reasoning that "[t]he Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right" and case law does not support "the conclusion that the Government infringes associational freedom when it denies access to those whom it lawfully detains"); *Ukrainian-American Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1382 (D.C. Cir. 1990) (reasoning that "[t]o admit everyone who would like to advise the [detainee], each in accordance with his own view of the good life, and to communicate their offers of assistance would impose a substantial burden upon the Government.") PLN by its own admission seeks to "vindicate its own legal rights . . . and seek judicial relief for constitutional wrongs." [Docket No. 20, Pg ID 313]. It cannot expect the government to give it unrestricted access to inmates to assert its own rights, especially when PLN contact is unsolicited.

The Court recognizes that PLN has a right to associate and express itself as an organization through litigation. The Court will not extend this right to a right to litigate and access those who are lawfully in government custody. PLN appears to be seeking discovery in order to build its case against Defendants. Again, PLN is a publication. It is not seeking access to inmates in order to further its representation of inmates' constitutional grievances but to vindicate PLN's *own* rights as a publication. PLN is not informing the inmates of their legal rights but is essentially

13

soliciting discovery. The Court finds no right that "guarantees [PLN] governmental assistance in pursuing [PLN's] political objective." *Ukrainian-American Bar*, 893 F.2d at 1380. This is a discovery issue and PLN has failed to state a claim for a constitutional violation as to Defendants failure to allow visitation of inmates or delivery of "legal mail" not personal to an individual detained inmate.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Partial Judgment on the Pleadings **[Docket No. 11, filed October 7, 2011]** is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amendment claims survive judgment on the pleadings.

**IT IS FURTHER ORDERED** that Plaintiff has sufficiently stated a claim for a Fourteenth Amendment due process violation.

**IT IS FURTHER ORDERED** that Plaintiff has failed, on these facts, to state a claim for a constitutional violation for failure to allow visitation of inmates or delivery of "legal mail" not personal to an individual inmate.

**IT IS SO ORDERED**.

Dated: April 11, 2014    S/Denise Page Hood
                         Denise Page Hood
                         United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2014, by electronic and/or ordinary mail.

                                 S/Julie Owens for LaShawn R. Saulsberry
                                 Case Manager