# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HUMAN RIGHTS DEFENSE CENTER,
d/b/a Prison Legal News,

        Plaintiff,

v.                                                                    Case No. 11-CV-13460
                                                                     Honorable Denise Page Hood

LIVINGSTON COUNTY SHERIFF BOB
BEZOTTE, individually and officially,
and LIVINGSTON COUNTY,

        Defendants.

_____/

## ORDER REGARDING VARIOUS MOTIONS

## I.    Background

The Plaintiff, Prison Legal News, and Defendants, Livingston County and Bob Bezotte, have filed various motions that remain outstanding. All of those outstanding motions, except for Docket No. 127, are addressed herein. A short summary of the claims of Plaintiff can be found in other court Orders, specifically the Court's Orders dated March 29, 2013 [Docket Nos. 63, 64]. The Court notes that it has conducted three hearings regarding a number of the motions discussed in this Order–on April 23, 2014, May 9, 2014, and March 9, 2016. With respect to each motion discussed, the Court will specifically identify any hearing at which the motion was discussed. In addition, at the March 9, 2016, hearing, the parties agreed to withdraw their respective

motions for summary judgment [Docket Nos. 155, 156/157], with the understanding that they would be able to re-file them in the future, after the outstanding discovery matters are resolved and discovery is completed.[1]

## II.   Plaintiff's Motion for Reconsideration of Order Denying Plaintiff's Motion for Preliminary Injunction [Docket No. 66]

### A.   Motion for Reconsideration

Plaintiff timely filed a Motion for Reconsideration of the Court's March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction.  In order to obtain reconsideration of a particular matter, the party bringing the motion for reconsideration must: (1) demonstrate a palpable defect by which the court and the parties have been misled; and (2) demonstrate that "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h). *See also Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004); *Aetna Cas. and Sur. Co. v. Dow Chemical Co.*, 44 F.Supp.2d 865, 866 (E.D. Mich. 1999); *Kirkpatrick v. General Electric*, 969 F.Supp. 457, 459 (E.D. Mich. 1997). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same

---

[1]In light of the withdrawal of Plaintiff's Motion for Summary Judgment, the Court DENIES AS MOOT Plaintiff's Motion to File Supplemental Authority [Docket No. 211] and Plaintiff's Notice of (Motion to File) Supplemental Authority [Docket No. 223].  In light of the withdrawal of Defendants' Motion for Summary Judgment, the Court DENIES AS MOOT Plaintiff's Motion to Strike Motion to Amend/Correct Motion for Summary Judgment [Docket No. 165].

issues ruled upon by the court, either expressly or by reasonable implication." E.D. MICH. LR 7.1(h)(3); *Mailberger v. City of Livonia*, 747 F.Supp.2d 759 (E.D. Mich. 2010).

Plaintiff first asserts that the Court misapplied the law and facts in determining that a preliminary injunction was not warranted. Plaintiff claims that the Court erred in not issuing a preliminary injunction regarding Defendants' practices that prohibit delivery to inmates of books, magazines, and any other publications that are not printed on postcards. This argument, however, merely restates arguments previously made and ruled upon by this Court, and Plaintiff has demonstrated no palpable defect by which the Court and the parties have been misled. Plaintiff's Motion for Reconsideration is denied with respect to the rulings the Court made in the March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction.

Plaintiff also accurately asserts that the Court failed to address Plaintiff's 14th Amendment due process claim when ruling on Plaintiff's Motion for Preliminary Injunction. Plaintiff claims the Court's failure to address the due process claim is, in itself, sufficient grounds for granting reconsideration. The Court agrees – but only to the extent that granting the Motion for Reconsideration means that the Court needs to address Plaintiff's 14th Amendment due process claim in the context of Plaintiff's motion for preliminary injunction. The Court grants Plaintiff's Motion for

Reconsideration insofar as Plaintiff requests that the Court address and decide whether Plaintiff is entitled to a preliminary injunction with respect to its 14th Amendment due process claim. The Court notes that the parties briefed this issue when filing their briefs addressing Plaintiff's motion for preliminary injunction.[2] The Court concludes that additional briefing is not necessary, and the Court will decide the issue on the briefs the parties filed regarding Plaintiff's Motion for Preliminary Injunction. [Docket Nos. 25, 32, 34]

For the reasons stated in this Section II.A., the Court grants in part and denies in part Plaintiff's Motion for Reconsideration.

### B.   14th Amendment Due Process Claim

The Court utilizes the same standard for injunctive relief set forth in its March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction; specifically that:

> The district court must consider four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant would suffer irreparable harm absent a preliminary injunction; (3) whether granting the preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public's best interest. *Overstreet*, 305 F.3d at 573. The Court must make specific findings on each factor unless fewer factors would be dispositive. *Performance Unlimited v. Questar Publishers, Inc.* 52 F.3d 1373, 1381 (6th Cir.

---

[2]The American Civil Liberties Union Fund ("ACLU") filed an *amicus curiae* brief with respect to Plaintiff's Motion for Preliminary Injunction, but the ACLU did not brief this issue.

1995)....

[Docket No. 63, PgID 1975]

### 1.    *Likelihood of Success on the Merits*

The Court must engage in a two-step analysis to determine whether the challenged regulation/policy is reasonably related to a legitimate penological interest. *See Thornburgh v. Abbott*, 490 U.S. 401, 408-09 (1989); *Hrdlicka v. Reniff*, 631 F.3d 1044, 1048 (9th Cir. 2011). The Court must first determine whether Plaintiff has asserted a protected constitutional interest before analyzing whether Defendants' regulation is related to a legitimate penological interest. *Hrdlicka*, 631 F.3d at 1048 ("we first determine whether any First Amendment interest is implicated" before "apply[ing] the four-factor *Turner* test").

For the reasons that follow, the Court finds that Plaintiff's 14th Amendment due process claims regarding Defendants' notice of rejected mail/opportunity to appeal such reject policy implicate a constitutionally protected interest.  The Supreme Court has held that due process requires a governmental entity's "decision to censor or withhold delivery of a particular letter . . . be accompanied by *minimal procedural safeguards*" to be constitutional. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974) (emphasis added).  The *Martinez* court concluded that such "minimal procedural safeguards" include: (1) notice must be given to the inmate to whom the rejected letter

5

was addressed; (2) the author of the letter must be given a reasonable opportunity to object to (*i.e.*, heard with respect to) the decision to reject the letter; and (3) complaints concerning the rejection must be reviewed by someone other than the individual who originally rejected the letter. *Id.* at 418-19.  The Sixth Circuit has since elaborated on the *Martinez* court's conclusion, stating that:

> As an initial matter, we note that the "minimum procedural safeguards" referred to in *Martinez* are not mandated solely because of the Due Process Clause of the Fourteenth Amendment, but are primarily required because of the First Amendment free speech rights that are being protected. It is because of the concerns over protecting the freedom of speech and preventing the chilling of speech that procedural safeguards must be in place before letters are withheld or censored. *See Martinez*, 416 U.S. at 406 n. 10, 418-19, 94 S.Ct. at 1808 n. 10, 1814[;] *Campbell v. Sumner*, 587 F.Supp. 376, 378 (D.Nev.1984). Therefore, we must determine which procedures are required under the Due Process Clause to adequately protect the important First Amendment interests at stake.[3]
>
> We first hold that an incoming mail censorship regulation must provide that notice of rejection be given to the inmate-recipient. The need for such a requirement is evident: without notice of rejection, censorship of protected speech can escape detection by inmates and therefore go unchallenged. Although prison officials may have occasionally, or even consistently, given notice to inmates, the regulation does not require that notice be given.
>
> Second, we hold that the mail censorship regulation is insufficient because it fails to require that notice and an opportunity to protest the decision be given to the author of the rejected letter. We reach this conclusion for two reasons. First, the decision in *Martinez*, as previously

---

[3]The Court notes that in *Martin*, as in this case, the court concluded that the plaintiff did not demonstrate a likelihood of success with respect to its First Amendment claims (in fact, the *Martin* court actually ruled that the plaintiff's First Amendment claim was not viable).

discussed, was premised on the fact that the First Amendment rights of free citizens were implicated by the censorship of prisoners' mail. Without notifying the free citizen of the impending rejection, he would not be able to challenge the decision which may infringe his right to free speech. *Cf. Trudeau v. Wyrick*, 713 F.2d 1360, 1366 (8th Cir.1983) (author of letter brought a First Amendment challenge);[] *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1027-28 (2d Cir.1985) (the author would have standing to challenge interference with prisoners' mail). Second, since the inmate-recipient would not have seen the contents of the withheld letter, he may require the aid of the author to meaningfully challenge the rejection decision. *See Cofone v. Manson*, 409 F.Supp. 1033, 1042 (D.Conn.1976) (holding that a publisher must receive notice when a prison official decides to withhold a particular publication since a prisoner "cannot be expected to marshal arguments in favor of its admission without the assistance of someone familiar with the material").

We conclude, finally, that a mail censorship regulation must provide for an appeal of the rejection decision to an impartial third party prior to the letter being returned. This is necessary to ensure that future rejection decisions are fair, and based on appropriate factors.

*Martin v. Kelley*, 803 F.2d 236, 243-44 (6th Cir. 1986).

Based on *Martinez* and *Martin*, the Court finds that Plaintiff has a constitutionally protected interests in: (a) receiving notification from Defendants when Defendants reject (*i.e.*, do not deliver) mail Plaintiff sends to designated inmates at the Livingston County Jail, and (b) being able to appeal any such rejection to an impartial third party (at least with respect to the initial copies of any publication).[4] In this case,

---

[4]*See, e.g., Prison Legal News v. Livingston*, 683 F.3d 201, 223(5th Cir. 2012) (emphasis in original) (after a review committee's denial of a publication, "*subsequent* denials of identical publications amount to routine enforcement of a

it is undisputed that the Livingston County Jail policy does not require that a sender or the designated inmate recipient be notified that mail has been rejected, nor does it provide that such sender or inmate have a right to appeal/be heard with respect to the rejection of the mail. [*See, e.g.,* Docket No. 155-7, PgID 3625]  Likewise, it is undisputed that Defendants did not notify Plaintiff or any designated inmate recipients at the Livingston County Jail when Defendants rejected (did not deliver) publications sent by Plaintiff to such inmates. [Docket No. 25-2, PgID 529, ¶ 11; Docket No. 25-6, PgID 556, ¶ 6; Docket No. 155-7, PgID 3617, 3625]

Defendants argument regarding Plaintiff's procedural due process rights focused on the issue of standing (which Plaintiff has for 14th Amendment purposes, as the Court held in its March 29, 2013 Order Denying Plaintiff's Motion for Preliminary Injunction).  Defendants only peripherally addressed the issue of their failure to notify Plaintiff or inmates that Defendants rejected Plaintiff's publications sent to designated inmates.  To the extent Defendants did discuss the issue of procedural due process, their argument was limited to citing a district court case from Utah regarding "promotional sample packets," a case which is neither persuasive nor binding on this Court. *See Prison Legal News v. Cheshire*, 2006 U.S. Dist. LEXIS 48099, at *25-26 (D. Utah June 30, 2006).

---

rule with general applicability").

8

The Court now must engage in the second step of the analysis applied in *Thornburgh, i.e.*, determining whether the challenged regulation is reasonably related to a legitimate penological interest. *Hrdlicka*, 631 F.3d at 1048; *Thornburgh*, 490 U.S. at 408-09. As the Court stated in its March 29, 2013 Order denying Plaintiff's Motion for Preliminary Injunction:

> The Supreme Court has identified four factors to consider when determining whether "a prison regulation impinges on inmates' constitutional rights." *Turner v. Safley,* 482 U.S. 78, 89–91 (1987). The *Turner* test requires that:
>
>> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>>
>> 2. there must be alternative means of exercising the right that remain open to prison inmates;
>>
>> 3. we must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and
>>
>> 4. there must not be alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.
>
> *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Turner,* 482 U.S. at 89–91). Failure to satisfy the first factor is dispositive. *Turner*, 482 U.S. at 89–90. The remaining factors must be balanced together in order to evaluate the reasonableness of the challenged regulation. *Jones*, 569 F.3d at 267. The Court will review the challenged regulation with deference to "the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the

outside world." *Thornburgh*, 490 U.S. at 408.

[Docket No. 63, PgID 1975-76]

The Court finds that Defendant has failed to satisfy the first *Turner* factor. Defendants have not even provided a legitimate penological interest why Defendants do not notify the sender or the designated inmate recipient that the sender's mail to such intended inmate recipient was rejected (which necessarily precludes the ability to appeal any such rejection to an impartial third party). For that reason, the Court cannot find that there is any rational connection to a legitimate penological interest for failing to notify the sender or designated inmate recipient of the rejection (or not affording them the right to appeal any such rejection to an impartial third party). Defendant's failure to satisfy the first *Turner* factor is dispositive. The Court concludes that the challenged regulation (not providing notice to Plaintiff or the designated inmate recipient that Defendants rejected mail sent by Plaintiff to the designated inmates and not affording either of them the opportunity to appeal such rejection to an impartial third party) is not reasonably related to a legitimate penological interest.

With respect to Plaintiff's 14th Amendment procedural due process claim, the Court holds that it appears likely that Plaintiff will be successful on the merits.

2.    *The Remaining Factors*

10

The Court also finds that, because Plaintiff's constitutional rights likely are being violated, the remaining three injunctive relief factors (irreparable harm, harm to others, public interest) weigh in Plaintiff's favor.  Plaintiff is likely to suffer irreparable harm if an injunction requiring notice to Plaintiff and the designated inmate of rejected mail from Plaintiff to such inmate (and affording Plaintiff and the designated inmate recipient the right to appeal such rejection to an impartial third party) is not granted. *See, e.g.*, *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) ("there is potential irreparable injury in the form of a violation of constitutional rights"); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (there is a "presumption of irreparable injury that flows from violation of constitutional rights").  Further, as the Court has concluded that "there is a likelihood that the [Defendant's policy] will be found unconstitutional [*vis a vis* the absence of notice to the sender of the mail or the designated inmate recipient and the right to appeal any such rejection to an impartial third party]; it is therefore questionable whether [Livingston County] has any 'valid' interest in enforcing the [policy].  Consequently, [the Court] find[s] no substantial harm in preventing Defendants from enforcing it" insofar as Defendants fail to provide such notice. *Planned Parenthood*, 822 F.2d at 1400. "Finally, the last factor–whether the public interest is served by the injunction–is also met, since the public is certainly interested

11

in the prevention of enforcement of [a policy] which may be unconstitutional." *Id.*

The Court finds that all four factors weigh in favor of Plaintiff with respect to its request for a preliminary injunction with respect to its 14th Amendment due process claim. Specifically, the Court concludes that Plaintiff is entitled to a preliminary injunction as to Defendants' failure to provide notice to, and an opportunity to appeal by, Plaintiff and designated inmate recipients when Defendants reject publications sent by Plaintiff to such designated inmates at Livingston County Jail.

The Court grants Plaintiff's motion for preliminary injunction with respect to its 14th Amendment procedural due process claim. In addition, the Court orders that, effective immediately, Defendants must, in every instance that Defendants reject (*i.e.*, do not deliver) mail sent by Plaintiff to a designated inmate at the Livingston County Jail (at least with respect to the initial copy of any publication): (a) notify Plaintiff of such rejection; (b) notify the designated inmate recipient of such rejection; and (c) notify Plaintiff and the designated inmate recipient of the right to–and afford Plaintiff and the designated inmate recipient the opportunity to–appeal any such rejection to an impartial third party.

## III.  Plaintiff's Motion for an Injunction to Allow Access to Detainees-Witnesses [Docket No. 124]

On January 13, 2014, Plaintiff moved the Court to order Defendants to allow

Plaintiff's attorneys and experts access to possible inmate witnesses located at the Livingston County Jail. This motion was fully briefed, and its subject matter was argued at a hearing on April 23, 2014.

Plaintiff stated at the April 23, 2014 hearing that the matters at issue in this motion for an injunction to allow access to detainees-witness and the matters at issue in Plaintiff's motion to compel entry on land [Docket No. 123] were basically the same. The Court agrees with Plaintiff and, for the same reasons the motion to compel entry on land was denied, the Court will deny Plaintiff's motion for an injunction to allow access to detainees-witness. As the Court stated in addressing the motion to compel entry on land in its April 14, 2015 Order:

> Here, Plaintiff requests that the Court allow it to visit the Livingston County Jail to review the mailroom, the cell areas, and the law library of the Livingston County Jail, requests permission to review the processing of the mail at the jail, and also permission to interview "detainees confined at the jail" to discuss "issues pertaining to this litigation." Plaintiff has failed to cite to any cases in which a Court has allowed attorneys who are not seeking to give detainees legal advice or represent them in some way have access to detainees while incarcerated to further their own litigious goals. As stated in this Court's March 29, 2013, Order, PLN does not have a right to access inmates in order to vindicate its own constitutional grievances. *See Haitian Refugee Center v. Baker*, 953 F.2d 1498, 1513-14 (11th Cir. 1992) (reasoning that "[t]he Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right" and case law does not support "the conclusion that the Government infringes associational freedom when it denies access to those whom it lawfully detains"); *Ukrainian-American Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1382 (D.C. Cir. 1990) (reasoning that "[t]o admit everyone who would like to

13

advise the [detainee], each in accordance with his own view of the good life, and to communicate their offers of assistance would impose a substantial burden upon the Government.").

Plaintiff again seems to seek to inspect the mailroom and storage facilities, review the mail procedures, review the jail cells, and speak with inmates to assert its own rights and build its own case. Plaintiff is a publication and is not in the business of informing inmates of their legal rights [or] providing legal representation such that i[t] should have the same level of access to inmates as attorneys and legal aid organizations. The Court finds no right that "guarantees [Plaintiff] governmental assistance in pursuing [its] political objective." *Ukrainian-American Bar*, 893 F.2d at 1380. This Court is satisfied that, as Plaintiff noted, this is indeed a discovery issue but "rule 34 [does not] permit[] blanket discovery upon [a] bare skeletal request when confronted with an objection." *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). Plaintiff has failed to show how the information it seeks by entering the jail is relevant to its constitutional claims at this time or that access to information cannot be obtained by other means.

[Docket No. 221, PgID 6206-08 (emphasis added)]

As the foregoing language reveals, the Court implicitly denied Plaintiff's motion for an injunction to allow access to detainees-witnesses in its April 14, 2015 Order. [Docket No. 221]  In reviewing Plaintiff's brief in support of its motion for an injunction to allow access to detainees-witnesses, the Court finds no argument or law to persuade the Court that it should not apply the reasoning set forth above in deciding Plaintiff's motion for an injunction to allow access to detainees-witnesses.  Most significantly, the present action is not an action brought on behalf of inmates of Livingston County Jail, and Plaintiff "does not have a right to access inmates in order

to vindicate its own constitutional grievances." *Haitian Refugee Center*, 953 F.2d at 1513-14.

The Court denies Plaintiff's motion for an injunction to allow access to detainees-witnesses.

## IV.   Defendants' Motion for Leave of Court to Take Depositions [Docket No. 139]

On January 30, 2014, Defendants moved the Court for leave to depose four former inmates at the Livingston County Jail to whom Plaintiff attempted to mail its publications.   Plaintiff objects to Defendants' motion for four reasons: (1) the knowledge by Defendants of the elements of Plaintiff's claims; (2) the misbehavior of Defendants' counsel; (3) lack of merit; and (4) untimeliness.   The parties argued this motion at the May 9, 2014 hearing.

Defendants contend that they received Declarations from the four individuals (Michael Stoll, Michael Rickman, Brian Rheingans, and Andrew Tweedy) in December 2013.   In each declaration, the former Livingston County Jail inmate declared that he had not received any materials from Plaintiff or been notified that Plaintiff had tried to send materials to him while at the Livingston County Jail.  At the time Defendants filed their motion, three of the inmates were incarcerated at prisons throughout Michigan, including at least one in the Upper Peninsula near the Michigan/Wisconsin border.  The fourth individual had been released from prison,

15

though Defendant had not yet located him.

The Court is not persuaded that Defendants were entitled to the relief they sought in 2014, nor that such relief is necessary or appropriate at this time. First, the Court is not persuaded by Defendants' contention that they only became aware of the need to depose these four individuals in December 2013/January 2014. Defendants were or reasonably should have been on notice since the outset of the litigation that Plaintiff had a claim based on Defendants' failure to deliver mail to designated inmates at the Livingston County Jail. In April 2013, in Plaintiff's responses to Defendants' first set of discovery requests, Plaintiff identified two of the four individuals. Further, Plaintiff's specifically identified these four individuals on a witness list filed August 23, 2013, over five months before Defendants' motion was filed.

Second, Defendants claim to need to talk to these four individuals because each of them allegedly: (1) was sent materials by Plaintiff (though none of those four individuals has personal knowledge that such materials were sent to them); (2) can testify that he did not receive any materials from Plaintiff while incarcerated at Livingston County Jail; and (3) was not notified by Defendants (or anyone associated with Livingston County Jail) that Defendants had rejected (not delivered) mail sent by Plaintiff that was specifically addressed to him. Since the motion was filed,

16

however, Livingston County Jail Administrator, Lieutenant Tom Cremonte ("Cremonte") has testified that Defendants did not deliver materials mailed by Plaintiff to inmates at the Livingston County Jail (even if addressed to a designated inmate), nor did Defendants notify Plaintiff or any inmates to whom Plaintiff's materials were sent that Defendants had received–but did not deliver–such materials. [Docket No. 155-7, PgID 3625]  As Cremonte has admitted to the very conduct to which these four individuals will testify, it is unclear that their testimony is still necessary.

        In addition, it is not clear to the Court where the four individuals are located at this time.  In light of Cremonte's admissions, the value of and need for these four witnesses is debatable, at best.  If they are still in the Michigan prison system and/or located throughout Michigan (as they were when Defendants filed their motion), the Court is not persuaded that devoting judicial resources or the parties' resources on this issue furthers the interests of justice at this time.  In the event that this matter ultimately proceeds to trial and these four witnesses will be called to testify, the Court will consider a renewed motion by Defendants to take the depositions of these four individuals, if Defendants still desire to depose them.

        For the reasons stated above, the Court denies Defendants' Motion for Leave of Court to Take Depositions, without prejudice.

17

## V.     Defendants' Motion for Sanctions [Docket No. 159]

In its March 10, 2014 Motion for Sanctions, Defendants ask the Court to sanction: (a)  Plaintiff, for filing a Motion to File Supplemental Complaint with allegations Plaintiff knew or should have known were frivolous and lacked merit, and (b) "plaintiff" ACLU, for acting in bad faith when it conducted discovery "far beyond any scope as an *amicus curiae* and . . . further outside of the scheduling order."  The parties have fully briefed the Motion for Sanctions, and this Court heard arguments on the motion at the May 9, 2014 hearing.

### A.     Sanctions Warranted Against Plaintiff

Defendants contend that Plaintiff should be sanctioned pursuant to 28 U.S.C. § 1927 for filing a Motion for Leave to File a Supplemental Complaint ("Proposed Supplemental Complaint") on January 10, 2014 [Docket No. 122].  Section 1927 provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   The instant motion for sanctions constitutes the second time that Defendants have requested that Plaintiff be sanctioned for filing the Proposed Supplemental Complaint.  The first time Defendants sought sanctions against Plaintiff for filing the Proposed Supplemental Complaint was in their response to the Proposed

Supplemental Complaint, filed on January 27, 2014 [Docket No. 133]. When Plaintiff

withdrew the Proposed Supplemental Complaint on February 5, 2014 [Docket No.

147], however, Defendants' initial request for sanctions was obviated.

Defendants argue that sanctions should be imposed against Plaintiff because it

"knowingly and frivolously pursued a meritless claim in its Proposed Supplemental

Complaint." Specifically, Defendant states that Plaintiff's Supplemental Motion

includes claims that Plaintiff had First Amendment rights 'to communicate with those

confined to determine whether they have information pertaining to legal matters that

said detainee could be a witness for' and to have correspondence delivered from an

'attorney of record.'" [Docket No. 159, PgID 4572 (quoting Docket No. 122-1, PgID

2693, ¶¶ 7-8)] Defendant argues that Plaintiff knew or reasonably should have known

that filing such a claim was frivolous and vexatious because the Court had rejected

those claims in an Order Regarding Defendants' Motion for Partial Summary

Judgment, issued on March 29, 2013 [Docket No. 64]. In that Order, the Court stated

that Plaintiff does not have "a right to litigate and access those who are lawfully in

government custody" and that Plaintiff "failed to state a claim for a constitutional

violation as to Defendants' failure to allow visitation of inmates or delivery of 'legal

mail.'" *Id.* at PgID 1993. Defendants contend that Plaintiff should be sanctioned

because an "attempt to raise a claim that ha[s] already been rejected is sanctionable

under section 1927." [Docket No. 159, PgID 4572 (citing *Fharmacy Records v. Simmons*, 2006 WL 156669, at *3 (E.D. Mich., Jan. 20, 2006) (Roberts, J.) (sanctioning plaintiffs' attorney under section 1927 for pursuing meritless claims based on an argument that was similar to an argument previously rejected by the Court))].

Plaintiff argues that Defendants' Motion for Sanctions is meritless legally and factually. Plaintiff contends that its initial Complaint alleged that Plaintiff's in-house counsel sought to contact detainees before the lawsuit was filed (Compl. ¶¶ 22, 23), a right the Court concluded Plaintiff did not have. [Docket No. 64, PgID 1992]. Plaintiff states that, in the Proposed Supplemental Complaint, Plaintiff alleged that it sent letters to detainees at the Livingston County Jail as part of discovery and those letters were not delivered to the detainees. Plaintiff then expounds on the need for parties to be able to present evidence through witnesses and to meet with them in order to prepare for trial. [Docket No. 166, PgID 4660-64]  Plaintiff contends that Defendants are interfering with the discovery process as to Plaintiff's counsel having access to potential witnesses (Livingston County Jail detainees).

With respect to its decision to withdraw the Proposed Supplemental Complaint, Plaintiff states that:

> After further discussion with counsel for [Plaintiff], it was decided the motion to file a supplemental complaint, even if granted, could not allow

> [Plaintiff] to have access to the requested witnesses until after trial was completed. It was determined to withdraw the motion because [Plaintiff] had pending a motion for an order to obtain access to these detainees through the discovery process (D/E 124) and a grant of that motion would get immediate access to the potential witnesses.

[Docket No. 166, PgID 4658]

As Defendants' argue in their reply, Plaintiff does not explain how the allegations in the Proposed Supplemental Complaint were substantively different than the allegations that the Court rejected in its March 29, 2013 Order Regarding Defendants' Motion for Partial Summary Judgment. In both instances, Plaintiff challenged Defendants' denial of access by Plaintiff to detainees of the Livingston County Jail, something the Court had clearly ruled upon in its March 29, 2013 Order. The Court also is not persuaded by Plaintiff's contention that it decided to withdraw the Proposed Supplemental Complaint because it had filed a discovery motion for an order to access the detainees. The Proposed Supplemental Complaint was filed on January 10, 2014, and the motion for an order to access the detainees was filed on January 13, 2014, only three days later–and 14 days <u>before</u> Defendants filed their response to the Proposed Supplemental Complaint. In other words, Plaintiff had two weeks before Defendants' response within which it could have withdrawn the proposed Supplemental Motion that sought relief that the Court previously had ruled Plaintiff had no right to. Because Plaintiff elected to file the Proposed Supplemental

Complaint after Defendants denied concurrence in it and because Plaintiff did not withdraw the meritless Proposed Supplemental Complaint when it filed its motion for an order to access detainees-witnesses (the reason Plaintiff now asserts for withdrawing the Proposed Supplemental Complaint), Defendants needlessly incurred the expense of responding to the Proposed Supplemental Complaint.

For the reasons stated above, the Court concludes that Defendants are entitled to sanctions against Plaintiff with respect to: (a) the reasonable fees and costs Defendants incurred in responding to Plaintiff's Proposed Supplemental Complaint, (b) the reasonable fees and costs of Defendants associated with preparing their Motion for Sanctions and corresponding reply brief, and (c) one-half (.5) hour of Mr. Seward's time for arguing the Motion for Sanctions at the May 9, 2014 hearing (collectively, "Defendants' Fees and Costs"). The Court orders Defendants to provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Defendants' Fees and Costs.

### B.    Sanctions Not Warranted Against ACLU

Defendants recognize that the Court granted ACLU *amicus curiae* status in this lawsuit, and the ACLU had filed briefs in this matter on certain motions prior to Defendants filing the Motion for Sanctions on January 10, 2014. [Docket Nos. 28, 37, 56]  Defendants contend that the ACLU also has acted as a litigating *amicus curiae*

"by participating in discovery in this lawsuit when" the ACLU:

1.   Made a FOIA request from the Livingston County Sheriff's Department requesting a list of all Livingston County Jail inmates on January 27, 2014;

2.   Mailed 25 letters to inmates at the Livingston County Jail on February 19, 2014 (the "ACLU Letters"); and

3.   Informed the inmates that the ACLU was investigating the Livingston County Jail's mailing policy and inquired whether any inmate(s) was interested in meeting with an ACLU attorney for the purpose of obtaining legal representation or advice regarding the Livingston County Jail mailing policy.

Defendants argue that because the ACLU acted in bad faith in conducting the above described discovery and otherwise acting as a "litigating *amicus curiae*," the Court should sanction the ACLU by dismissing them as *amicus curiae* and disallowing any information received as a result of this "investigation" conducted outside the scope of the scheduling order.

The Court is not persuaded that Defendants' motion has any merit with respect to the ACLU.  First, other than Defendants' speculation, there is no evidence that the ACLU conducted discovery in this case.  Second, although ACLU's counsel may have conferred with Plaintiff's counsel, the Court is not aware of any authority (and Defendants have cited none) that prohibits counsel for a party to litigation from consulting with other attorneys.

The Court, the ACLU is pursuing an entirely separate legal issue and cause of action

23

than Plaintiff.  Plaintiff's lawsuit, as this Court has expressed, is about Plaintiff's rights, primarily centered on its First Amendment rights as a publisher.  Plaintiff's lawsuit is not about the rights of inmates at the Livingston County Jail. *See, e.g.*, Section III, above; Docket No. 221, PgID 6206-08.  The ACLU's efforts, including its FOIA request to obtain the names of the inmates on January 27, 2014 and mailing the ACLU Letters on February 19, 2014, are focused on the rights of inmates *vis a vis* the Livingston County Jail mailing policy.  The rights of Plaintiff and the rights of inmates of the Livingston County Jail may be related, but they are not the same.  Fourth, the very conduct of the ACLU about which Defendants complain in their Motion for Sanctions has become the subject of a lawsuit filed by the ACLU against Defendants – one in which this Court and the Sixth Circuit have found that Defendants unconstitutionally processed (or, more accurately, failed to process) the ACLU Letters.

For the reasons stated above, the Court concludes that Defendants' Motion for Sanctions should be denied to the extent they seek sanctions against the ACLU.

### C.      Conclusion

Based on the analysis and conclusions set forth in Sections V.A. and B., the Court grants in part and denies in part Defendants' Motion for Sanctions.

## VI.    Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 181]

Plaintiff seeks leave to file a Second Amended Complaint to add Lieutenant Tom Cremonte as a Defendant, and it has alleged  sufficient facts to support First, Fifth and Fourteenth Amendment claims against him.  Plaintiff also seeks to add factual allegations related to mail that was sent by Plaintiff to certain prisoners incarcerated at the Livingston County Jail after the date of the original complaint because Defendants have continued to censor Plaintiff's mail pursuant to Defendants' customs, practices and policies.  Plaintiff contends that, if this Court grants the filing of this amended complaint, neither Plaintiff nor Defendants will need additional discovery as to the claims against Cremonte or as to the inclusion of specific details regarding mail sent to the Livingston County Jail after the commencement of this action.  Plaintiff further contends that the filing of the Second Amended Complaint will not unduly prejudice Defendants because the additional mail specified in the Second Amended Complaint was delivered directly to the Livingston County Jail, which Defendants  control.

Defendants argue that Plaintiff's Motion for Leave to File a Second Amended Complaint should be denied because: (1) it is untimely, as it was filed after the close of discovery and the filing of cross-motions for summary judgment; (2) Plaintiff has failed to establish good cause for modification of the scheduling order; (3) Plaintiff knew of the factual basis for its request to add Cremonte and the new claims for

common law conversion and unconstitutional takings at least 12 (and maybe as many as 26) months before filing the Motion for Leave to File a Second Amended Complaint; and (4) the amendments would be futile as to the claims against Cremonte, the new common law conversion claim, and the unconstitutional takings claims.

Plaintiff asserts that the new claims set forth in the Motion for Leave to File a Second Amended Complaint stem from information learned at the deposition of Cremonte, which did not occur until January 31, 2014 (two months before Plaintiff's Motion for Leave to File Second Amended Complaint was filed). Plaintiff also contends that any delay in seeking to add Cremonte and the new claims is primarily due to Defendants failure to provide responses to discovery requests.

Rule 15 permits a party to amend its complaint once as a matter of course within (i) twenty-one days after service of the complaint; or (ii) within twenty-one days after service of an answer to the complaint or a motion to dismiss, whichever is earlier. Fed. R. Civ. P. 15(a)(1). Thereafter, a party may only amend its complaint with the adverse parties' written consent or leave of court. Fed. R. Civ. P. 15(a)(2).[5]

_____

[5]When a party seeks to add factual allegations concerning events that occurred after the date on which it filed the original complaint, a motion to supplement the complaint under Rule 15(d) – rather than a motion to amend the complaint under Rule 15(a) – is the mechanism by which to obtain such relief. The standard for granting leave to file a supplemental complaint under Rule 15(d) is the same as the standard for granting leave to file an amended complaint under Rule 15(a). *See Glatt v. Chicago Park District*, 87 F.3d 190, 194 (7th Cir.1996).

Rule 15 espouses a liberal standard to the extent that it authorizes district courts to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). District courts "should deny leave to amend" in circumstances involving: (1) undue delay in seeking leave to amend; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies through previous amendments; (4) undue prejudice to adverse parties; and (5) futility of the proposed amendment. *Williams v. Detroit Bd. of Educ.*, 306 F. App'x. 943, 949 (6th Cir. 2009). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

The Court finds that Plaintiff has good cause for seeking to further amend its Complaint to add claims against Cremonte, as well as the conversion and takings claims. Cremonte's deposition did not occur until shortly before Plaintiff filed its Motion for Leave to File Second Amended Complaint. As such, Plaintiff likely could not have known most of the information that Cremonte would provide, including: (a) the alleged extent of his involvement in processing the mail at Livingston County Jail; (b) what Cremonte (himself) did with mail sent by Plaintiff to the Livingston County Jail; and (c) what ultimately happened to the mail sent by Plaintiff to inmates at the

Livingston County Jail.  The lack of cooperation by Defendants *vis a vis* discovery requests from Plaintiff also contributed to the inability of Plaintiff to fully recognize the claims Plaintiff now seeks to add to its cause of action.  Based on the active motion practice of Plaintiff and the timing of the Motion for Leave to File Second Amended Complaint, the Court finds that Plaintiff has not exercised undue delay, acted with a dilatory motive, or failed to cure deficiencies through previous amendments.

The Court also finds that Defendant will not suffer undue prejudice by having to defend the new allegations in Plaintiff's Second Amended Complaint.  First, the new allegations and claims stem from information Plaintiff obtained during its deposition of Cremonte, an employee of Defendants.  The allegations arise out of the discovery that has occurred in this case, and Plaintiff has represented that it will not need any additional discovery to pursue the new claims.  The Court intends to hold Plaintiff to that representation, and Plaintiff will not be able to conduct new discovery insofar as such discovery would turn on the new allegations or claims asserted in the Second Amended Complaint.[6]

Second, the parties have withdrawn their summary judgment motions.

_____

[6]Defendant, however, can move the Court if it believes it needs additional discovery with respect to the new claims set forth in the Second Amended Complaint.

Defendants will have the opportunity to re-file their summary judgment motion and argue the reasons Plaintiff's claims against Cremonte and the new claims should be dismissed as a matter of law.  Most, if not all, of Defendants' arguments have been formulated and, seemingly, incorporated into their previous summary judgment motion and/or their response to the Motion for Leave to File a Second Amended Complaint.  In addition, although the Court will consider any arguments regarding the viability of Plaintiff's claims in any dispositive motion(s) filed in the future, the Court is not persuaded at this time that the proposed amendments are futile.

Finally, the Court finds that permitting Plaintiff's proposed amendments promotes the interests of justice.  This case has been ongoing for several years, for a variety of reasons.  The Court concludes that addressing the matters set forth in Plaintiff's Second Amended Complaint in the present litigation will best conserve the time and expense of the parties and the Court.

The Court grants Plaintiff's Motion for Leave to File Second Amended Complaint and orders Plaintiff to file with the Court, within seven days of the date of this Order, a copy of the Amended Complaint attached to its Motion for Leave to File Second Amended Complaint – with the title edited to read: "Second Amended Complaint for Damages, Declaratory Relief, Injunctive Relief and Jury Demand."

## VII.  Plaintiff's Motion for Order to Show Cause Why Defendants Should Not

be Held in Contempt [Docket No. 227]

On November 22, 2015, Plaintiff filed a motion asking the Court to hold Defendants in contempt.  Plaintiff argues Defendants failed to comply with the Court's September 30, 2015 Order requiring Defendants to, on or before October 30, 2015: (a) produce certain discovery to Plaintiff; or (b) provide the Court with an affidavit stating why Defendants "cannot produce the requested information."  The motion was fully briefed by the parties, and on March 9, 2016, the Court held a hearing on Plaintiff's motion.

It is undisputed that Defendant did not, on or before October 30, 2015, produce any discovery documents identified in the September 30, 2015 Order, nor did Defendants provide the Court with an affidavit that specified why Defendants could not produce the requested information to Plaintiff.  It is further undisputed that, on October 30, 2015, Defendants sent Plaintiff an affidavit from Cremonte that purported to explain why Defendants could not produce the requested information.

In its Motion, Plaintiff asks that the Court to: (1) grant Plaintiff's motion for contempt; (2) order Defendants to appear to show cause why an order of civil contempt should not be entered against them; (3) order Defendants to produce the requested documents or strike/exclude Defendants from relying on their "alleged" security incidents caused by mail; (4) require Defendants to file sworn affidavit(s)

30

showing compliance with the Court's orders; and (5) award costs and attorney fees associated with this motion to Plaintiff.

Prior to the March 9, 2016 hearing, Defendants notified Plaintiff that it was updating its software and, as a result, beginning in December 2015, Defendants were able to begin searching jail records back to 2009. At the hearing, the parties argued and discussed what information was now available to certain persons at the Livingston County Sheriff's Department, as well as the need for additional information from persons generally referenced but not identified in Cremonte's October 30, 2015 affidavit. As a result of the March 9, 2016 hearing, the parties stipulated to the entry of an order granting Plaintiff limited discovery. [*See* Docket No. 237]

The Court finds that such stipulated order addresses and resolves the relief Plaintiff requested with respect to parts (2)-(4) above. As to part (1), the Court concludes that Defendants should not be held in contempt because they did cause Cremonte to timely file an affidavit that addressed, albeit generally and inadequately (as discussed below), the information identified in the Court's September 30, 2015 Order. In addition, because Plaintiff received the affidavit within the time parameters set by the Court, the Court finds that Plaintiff was not prejudiced by Defendants' failure to comply with the Court's directive to file the affidavit with the Court.

In determining whether costs and fees should be assessed against Defendant

(part (5)), the Court finds that Defendants efforts to comply with and satisfy the directives of the Court in the September 30, 2015 Order were underwhelming and inadequate–and warrant the imposition of an award of costs and fees against Defendants. First, as Defendants admit, the affidavit of Cremonte was not filed with the Court – as the Court expressly required in the September 30, 2015 Order, when it stated: "If Defendants determine that they are unable to give an answer to a specific RFP, Defendants must provide the Court with signed affidavits stating why they cannot produce the requested information." [Docket No. 226, PgID 6254 (emphasis added)].

Second, as is evident by even a cursory review of Cremonte's October, 30, 2015 affidavit, very few of his statements were based on his personal knowledge of what information was available. Instead, Cremonte averred what he allegedly had been told by various other Livingston County employees, none of whom are identified his affidavit. Likewise, the affidavit provides little detail about why Defendants could not produce the requested information (in fact, Cremonte does not really even state that Defendants cannot produce it); rather, Cremonte repeatedly suggests that Defendants did not have the resources (the personnel) to produce the requested information.

Third, the Court notes that the September 30, 2015 Order stemmed from a motion to compel filed by Plaintiff due to Defendants' ongoing failure to comply with

certain discovery requests of Plaintiff.  In the September 30, 2015 Order, the Court analyzed but ultimately denied Plaintiff's request that the Court sanction Defendants for their failure to produce the requested and required information.  When doing so, however, the Court stated, "the Court does not determine that sanctions are warranted at this time.  Defendant believed that it was in compliance with the Court's Order. The Court is not satisfied that Defendants intentionally defied its Order or purposefully attempted to evade compliance." [Docket No. 226, PgID 6255]

With respect to the September 30, 2015 Order, the Court again finds that Defendants did not intentionally defy the Court's Order or purposefully evade compliance.  Notwithstanding the absence of any intentional defiance or purposeful evasion of compliance, however, the Court concludes that the interests of justice, including to compensate Plaintiff for having to file a motion that it should never have had to file and to encourage and ensure Defendants' full compliance with future orders of the Court, demand the imposition of costs against Defendant in connection with this matter at this time.  Defendants' actions (or inactions) have required Plaintiff to repeatedly file motions to obtain discovery to which the Court has determined Plaintiff is entitled.  More significantly, as it relates to the instant motion, Defendants failed to take action to comply with the directives of the Court for a period of several weeks after Plaintiff notified Defendants that they failed to comply with the Court's

September 30, 2015 Order, leading Plaintiff to file (appropriately) the instant motion.

The Court grants Plaintiff's Motion for Order to Show Cause to the extent that Plaintiff asked the Court to award costs and attorney fees associated with this Motion for Order to Show Cause to Plaintiff. The Court orders that Defendants shall pay Plaintiff the costs and fees Plaintiff reasonably incurred in preparing and filing the Motion for Order to Show Cause (and accompanying brief), preparing and filing its reply brief with respect to the same, and appearing at the March 9, 2016 hearing (collectively, "Plaintiff's Fees and Costs"). The Court orders Plaintiff to provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Plaintiff's Fees and Costs.

Based on the analysis and conclusions set forth in this Section VII, the Court grants in part and denies in part Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt.

## IX.   CONCLUSION

Accordingly,

A.   IT IS ORDERED that Plaintiff's Motion for Reconsideration of Order Denying Plaintiff's Motion for Preliminary Injunction [Docket No. 66] is GRANTED IN PART and DENIED IN PART.

B.   IT IS FURTHER ORDERED that Plaintiff's Motion for an Injunction to Allow Access to Detainees-Witnesses [Docket No. 124] is DENIED.

C.   IT IS FURTHER ORDERED that Defendants' Motion for Leave of

34

Court to Take Depositions [Docket No. 139] is DENIED WITHOUT PREJUDICE.

D.     IT IS FURTHER ORDERED that Defendants' Motion for Sanctions [Docket No. 159] is GRANTED IN PART and DENIED IN PART.

E.     IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 181] is GRANTED.

F.     IT IS FURTHER ORDERED that Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt [Docket No. 227] is GRANTED IN PART and DENIED IN PART.

G.     IT IS FURTHER ORDERED that, effective immediately, Defendants shall, in every instance that Defendants reject (*i.e.*, do not deliver) mail sent by Plaintiff to a designated inmate at the Livingston County Jail (at least with respect to the initial copy of any publication): (a) notify Plaintiff of such rejection; (b) notify the designated inmate recipient of such rejection; and (c) notify Plaintiff and the designated inmate recipient of the right to–and afford Plaintiff and the designated inmate recipient the opportunity to–appeal any such rejection to an impartial third party.

H.     IT IS FURTHER ORDERED that Defendants shall provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Defendants' Fees and Costs.

I.     IT IS FURTHER ORDERED that Plaintiff shall file with the Court, within five days of the date of this Order, a copy of the Amended Complaint attached to its Motion for Leave to File Second Amended Complaint – with the title edited to read: "Second Amended Complaint for Damages, Declaratory Relief, Injunctive Relief and Jury Demand."

J.     IT IS FURTHER ORDERED that Plaintiff shall provide the Court, within 30 days of the date of this Order, a detailed invoice that sets forth the basis for Plaintiff's Fees and Costs.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager